J-A25008-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| G.R.S. | : | IN THE SUPERIOR COURT |
| | : | OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| M.L.S. | : | |
| | : | |
| Appellant | : | No. 547 MDA 2019 |

Appeal from the Order Entered March 15, 2019
In the Court of Common Pleas of Lancaster County
Civil Division at No:  CI-15-07898

BEFORE:  STABILE, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY STABILE, J.:                **FILED: APRIL 13 ,2020**

M.L.S. ("Mother") appeals from the order entered March 15, 2019, which awarded her and G.R.S. ("Father") shared legal and physical custody of their daughter, A.K.S. ("Child"), born in September 2012.  The order also purported to deny Mother's request for relocation and directed that Child would attend public school in the school district where Father lives in the event the parties end her enrollment in private school.  After review, we affirm in part, vacate in part, and remand for further proceedings.

We summarize the relevant factual and procedural history of this matter as follows.  Mother and Father married in 2010 but separated in 2012 prior to Child's birth.  They divorced in 2014.  Father began attending medical school before the parties separated and continued his medical training after Child was born.  Because Father's training required him to live a significant distance away from Mother, including completing a year of rotations a few hours away

and completing his residency in a different state, he had limited involvement with Child for the first five years of her life. After Father finished his training in 2017, he purchased a home about two miles away from Mother in Manheim, Lancaster County, and obtained a job as a physician at a local hospital. Father lives with his girlfriend, A.C., and has no other children. Meanwhile, Mother married J.K. ("Stepfather") in 2017. Mother and Stepfather have one child together, C.K., a female born in September 2018.

Prior to the start of these proceedings, the parties exercised custody of Child pursuant to an agreed-upon order entered July 12, 2016, which awarded primary physical custody to Mother and awarded shared legal custody to both parties. The order awarded Father partial physical custody on certain dates, but did not specify a regular schedule. After Father finished his training and moved to Manheim in 2017, the parties exercised custody of Child informally, eventually agreeing that Father would exercise partial physical custody "every other Thursday through Sunday[.]" N.T., 3/13/19, at 70. On October 12, 2018, Mother filed a petition to modify custody, requesting that the trial court enter a new order that would be more consistent with the parties' current circumstances. The court entered an interim order on December 20, 2018, pending a hearing on Mother's petition. The interim order awarded the parties shared legal custody, awarded Mother primary physical custody, and awarded Father partial physical custody on alternating weekends, in accordance with the parties' informal agreement, from after school on Thursday until 7:00 p.m. on Sunday.

- 2 -

On February 4, 2019, Father filed a petition for special relief. Therein, Father averred that he received a letter from Mother, stating that she would be moving from Manheim to Stevens, Lancaster County, which was thirty minutes away and in a different school district. Mother also stated that Child would no longer be attending the private school where the parties had enrolled her after the current school year but would instead attend public school in Mother's new school district. In his petition, Father contended that Mother's move would be a "relocation" pursuant to Pennsylvania's child custody statute and objected to Mother's relocation. He requested that the trial court enter an order directing Mother to comply with the statute's relocation requirements and prohibiting her from relocating pending the parties' custody hearing. The court entered an order on February 4, 2019, directing that Mother comply with the custody statute's relocation notice requirements.

The trial court conducted a hearing on March 13, 2019. Relevant to this appeal, the parties presented testimony focusing on Mother's motivations for moving to Stevens and on Father's concerns. The parties also testified as to Father's lack of involvement with Child during the first five years of her life, with Mother arguing that Father should have been more involved and Father insisting that his medical training made greater involvement impossible.

Regarding the motivations for her proposed move to Stevens, Mother testified that she and Stepfather currently reside in a small home on a 0.07-acre lot. N.T., 3/13/19, at 58. She expressed concern that the home is located on an "alleyway that connects . . . two streets" and that a car recently

- 3 -

struck one of Child's friends while the child was riding her bicycle in the alleyway. *Id.* at 61. In contrast, Mother testified that her family's new home would be larger and sit on a 2.25-acre lot, which would provide Child with plenty of space to play. *Id.* at 63, 79, 82. She acknowledged that her new home would be thirty minutes away from her current home but maintained that she and Stepfather had been unable to locate a desirable property closer to Father. *Id.* at 77-78, 103-06. While Mother also acknowledged that the move would require Child to change school districts, she noted that Child had been attending a private school and that Child would need to change schools regardless of whether she resided in a new district or not, assuming that the parties stopped sending her to the private school. *Id.* at 64, 82.

Mother also testified in support of maintaining primary physical custody of Child during the school year, emphasizing that she served as Child's primary caretaker during the first five years of her life. *Id.* at 65-74. Mother blamed Father for his lack of involvement with Child, contending that he could have been involved more consistently but simply chose not to do so. Specifically, Mother testified that she brought Child to the home of Father's parents for about the first two and a half years of her life, and that she "didn't see [Father] much during that time[.]" *Id.* at 65. Father later filed a custody action and Child began spending one or two weeks with him each month. *Id.* at 67-68, 95. Mother recalled that she and Father experimented with several informal custody arrangements after he moved to Manheim in 2017, including sharing

physical custody of Child equally. *Id.* at 68-70. According to Mother, this shared physical custody arrangement failed after "a month or two" because Father "sent me a bunch of dates that weren't going to work for him because of his work schedule. And my concern was with [Child] starting Kindergarten, I wanted something consistent. So I said, well, let's come up with something else." *Id.* at 68-69. Mother stressed Father's lack of consistency, contending that Father, "has shown nothing but inconsistencies since he has been here. We tried the 50/50, that wasn't consistent. . . . He's put a lot of priorities in front of her upon his move up here. I found out at a child[]support hearing that he'd gotten a second job upon his move up here. So rather than really push for 50/50 he choose [*sic*] to work at his second job." *Id.* at 72-74. She contended that Father quit his second job only days before their child support hearing. *Id.* at 87.

As for Father's testimony, he objected stating that Mother's move would make it "more strenuous" for him to exercise custody, because it would be a longer distance for him to travel, and because it would make it more difficult for his extended family to spend time with Child. *Id.* at 149. He explained that Child would not only be moving a half hour or more[1] away from him, but

---

[1] The evidence presented during the hearing differed as to the exact length of time that it takes to travel from Manheim to Stevens, with Mother testifying that the drive is thirty minutes and Father testifying that the drive is thirty to thirty-five minutes. N.T., 3/13/19, at 106, 132-33. The trial court found that the trip takes thirty-five minutes in its opinions. Trial Court Opinion, 3/21/19, at 6; Trial Court Opinion, 5/2/19, at 6.

that she would be moving an hour away from his parents, his cousin, and his aunt and uncle as well. *Id.* at 143-44, 149.

Father also requested shared physical custody of Child and endeavored to rebut Mother's claim that he could have been involved in Child's life more consistently during his medical training. Father testified that he completed his first year of rotations a few hours away from Mother and Child, and that he was "very busy. Monday through Friday, I did office rotation. . . . [T]here were other ones . . . that required weekends and overnights, and things like that." *Id.* at 122-23. He stated that he was only able to visit Child once per month during that time. *Id.* at 124-25. Father explained that he completed an additional year of rotations at hospitals closer to Mother and Child, which allowed him to visit more regularly. *Id.* at 123-26, 169. After finishing his rotations, Father began a residency in a different state. *Id.* at 126-27. He characterized his schedule as "[v]ery intense" and maintained that there was no way he could have exercised shared physical custody. *Id.* at 147. Father testified that he completed his residency and moved to Manheim in July of 2017, so that he could "be a part" of Child's life. *Id.* at 128. He conceded that he took a second job at a different hospital for approximately a year after moving to Manheim but insisted that he did so in order to pay off the credit card debt that he amassed during his residency. *Id.* at 147, 159-60.

Following the hearing, on March 15, 2019, the trial court entered an order awarding the parties shared legal custody and shared physical custody

of Child on an alternating weekly basis, with exchanges occurring each Sunday at 7:00 p.m.  The order also purported to deny Mother's requested relocation and directed that Child would attend school in Father's school district if and when she stopped attending her private school.  The order stated, "Mother's request to relocate with the Child is DENIED.  While Mother is free to move to Stevens, Pennsylvania, and exercise her periods of custody there, the Child shall be enrolled in [Father's school district] should the parties decided [*sic*] to discontinue private education."  Order, 3/15/19, at 1.

Regarding the reasons for its decision, the trial court filed an opinion on March 21, 2019, in which it conducted an analysis of the custody best interest factors listed at 23 Pa.C.S.A. § 5328(a), in addition to the custody relocation factors listed at 23 Pa.C.S.A. § 5337(h).[2]  The court explained that it believed both Mother and Father were capable parents for Child and that it would be in Child's best interest to spend an equal amount of time with both parties.  Trial Court Opinion, 3/21/19, at 9-12.  The court also explained its decision to deny Mother's relocation.  While the court concluded that Mother's move would not impair Father's custody rights, "if those rights were limited to Father's blocks of custody[,]" it found that the move would still constitute a relocation because it would impair Father's ability to participate in Child's "medical care, education . . . and other activities. . . . and for him to be a part of her life beyond simply

---

[2] The trial court issued an additional opinion in response to Mother's concise statement on May 2, 2019.

- 7 -

his dedicated custody time." *Id.* at 6. Finally, the court acknowledged that Mother's plan to move to a larger and safer property would benefit Child but expressed disbelief that Mother could not have found a suitable property closer to Father. *Id.* at 5-12. Mother timely filed a notice of appeal from the March 15, 2019 order, along with a concise statement of errors complained of on appeal, on April 5, 2019.

Mother now raises the following claims for our review:

I. Whether the [trial] court erred as a matter of law and/or abused its discretion by finding Mother's move to be a relocation under Section 5337 of the Child Custody Act[?]

II. Whether the [trial] court erred as a matter of law and/or abused its discretion by denying Mother's request to relocate, if determined to be a relocation in the first place[?]

III. Whether the [trial] court erred as a matter of law and/or abused its discretion in ordering that the Child attend [Father's] [s]chool [d]istrict instead of [Mother's] [s]chool [d]istrict where Mother has moved[?]

IV. Whether the [trial] court erred as a matter of law and/or abused its discretion in ordering shared physical custody during the school year where the factors under [Section] 5328 weigh more heavily toward Mother by the [c]ourt's own analysis[?]

Mother's Brief at 7.

This Court adheres to the following standard of review in child custody appeals:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial

judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted). The factors that trial courts must consider when awarding custody are set forth at Section 5328(a):

> **(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> > (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
> >
> > (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
> >
> > (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
> >
> > (3) The parental duties performed by each party on behalf of the child.
> >
> > (4) The need for stability and continuity in the child's education, family life and community life.
> >
> > (5) The availability of extended family.
> >
> > (6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

In addition, the factors that trial courts must consider when ruling on a request to relocate[3] are set forth at Section 5337(h):

---

[3] Our child custody statute defines "relocation" as "[a] change in a residence of the child which significantly impairs the ability of a nonrelocating party to exercise custodial rights." 23 Pa.C.S.A. § 5322(a).

**(h) Relocation factors.--**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether

there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h).

Mother's first two claims on appeal relate to the trial court's decision to deny her desired relocation from Manheim to Stevens. Initially, Mother argues that her move did not constitute a "relocation" pursuant to our child custody statute, because it did not impair Father's ability to exercise his custody rights significantly. Mother's Brief at 13, 16-17. She emphasizes that she moved only thirty minutes away from Father, and that there was no evidence that Child would begin seeing new medical providers such that the move would make it more difficult for Father to attend her medical appointments. *Id.* at 13, 17. In any event, Mother continues, she has been the parent responsible for Child's medical care, education, and extracurricular activities, and Father has stated that he does not involve himself in Child's life outside of his own custody time. *Id.* at 16-17.

In the alternative, assuming that her move did constitute a "relocation," Mother argues that the trial court erred by denying her request to relocate. Mother maintains that the court's decision is unsustainable in light of its factual findings, which favored her. *Id.* at 19-25. She contends that she served as Child's primary caretaker for the first five years of her life, that Child is thriving in her care, and that permitting relocation would provide Child with a larger,

safer, home with more space to play. *Id.* Mother also challenges the court's finding that she was not credible in her assertion that she was unable to locate a desirable home closer to Father. *Id.* at 25. Mother characterizes the court's determination as arbitrary and unsupported by the record, suggesting that the court must have been "contriving a new rule that any custodial parent who plans to relocate must first recite a due diligence list of alternative relocation sites[.]" *Id.*

After careful review of both the law and the certified record, we agree with Mother and conclude that her move from Manheim to Stevens was not a "relocation" as Section 5322 defines that term. As the trial court found in its opinion, the relatively minor inconvenience of a thirty-five minute drive does not "significantly impair" Father's ability to exercise custody of Child. While the court found that Mother's move was a "relocation" nonetheless, because it would "make it difficult for Father to transport [] Child to school" and to attend her medical appointments, school events, and other activities, "beyond simply his dedicated custody time," the record demonstrates that the court's concerns were largely speculative. *See* Trial Court Opinion, 3/21/19, at 6. Significantly, Father testified that he does not attempt to involve himself in Child's life "beyond simply his dedicated custody time" as the court suggests. Father stated that he has never called Child on the phone while she was in Mother's care because "I just didn't want to go through that drama by doing that. I just figured her time is her time, my time is my time." N.T., 3/13/19,

at 151; *see also id.* at 168 ("Like I said, her time is her time, my time is my time."). In addition, Father stated that he has taken Child to a gymnastics practice only once, because the practices are on Mondays and he has had custody of Child only once on a Monday. *Id.* at 137-38. His sole explanation for why he did not attend practices during Mother's custody time was that he wanted to avoid "the awkwardness of [Mother] being there with her affiliate, husband, or whoever[.]" *Id.* at 171.

Even assuming that Father's attitude changes and that he attempts to become more involved with Child outside of his dedicated custody time in the future, there is little if any evidence in the record that Mother's move would impair his ability to do so. As Mother points out, there was no testimony that she planned to change Child's medical providers, such that it would be harder for Father to attend her appointments. In addition, the record indicates that Father has an unusual work schedule, which would likely impair his ability to attend Child's appointments, events, and activities, regardless of where they occur. Father typically works twelve days per month, at least five of which he spends on a night shift, from 5:00 p.m. to 5:00 a.m. *See* Plaintiff's Exhibit 6 (Father's work schedule). Father also works a variety of day shifts, with one such shift lasting from 11:00 a.m. until 9:00 p.m. *Id.* On the days Father is working, it is doubtful that he would be able to attend Child's appointments, events, and activities, even if they occurred in Manheim. On the days Father is not working, he testified that he has no obligations at all. N.T. 3/13/19, at

119-20. Accordingly, he would be entirely free to attend Child's appointments, events, and activities, and Mother's move would not impair his custody rights in any way. For all of these reasons, the record does not support the court's finding that Mother's move to Stevens "significantly impairs" Father's custody rights. We conclude that Mother's move was not a "relocation" pursuant to our child custody statute and that the court abused its discretion by concluding otherwise.[4]

Nonetheless, because the trial court's denial of Mother's "relocation" has not prejudiced her, we conclude that the court's mistake was harmless, and that we need not disturb that portion of the March 15, 2019 order. *See In re M.T.*, 607 A.2d 271, 281 (Pa. Super. 1992) (observing that not all trial court errors require reversal and that the complaining party must first demonstrate that the error was actually harmful in some way). While the court stated that it was denying Mother's "relocation," it permitted her to move to Stevens and exercise custody of Child there. Therefore, Mother is in the same position that she would have been in had the court made the correct decision and reversing the court's order would have no practical effect.

We next consider Mother's fourth claim for ease of disposition. Mother contends that the trial court erred and/or abused its discretion by awarding the parties shared physical custody during the school year. Specifically, she

_____

[4] In light of this conclusion, we do not address Mother's alternative argument that the trial court should have granted her relocation.

- 15 -

contends that the court's award was contrary to its own factual findings. Mother's Brief at 29-30. Among other things, Mother emphasizes the court's findings that she had almost sole physical custody of Child during the first five years of her life; that she continued to take the lead on matters of medical care, education, and activities, even after Father moved to Manheim; and that Child was doing well under the previous custody order. *Id.* at 31-50. Mother surmises that the court must have employed an improper presumption in favor of shared physical custody when reaching its decision. *Id.* at 33-37, 43, 50.

We conclude that this claim does not entitle Mother to relief. In essence, Mother's claim amounts to an assertion that she must always have primary physical custody of Child because she has had primary physical custody in the past and Child has been doing well in her care. This assertion finds no support in our law. Our child custody statute directs that trial courts consider the parental duties that the parties perform on behalf of the child when awarding custody, as well as the need for stability and continuity. *See* 23 Pa.C.S.A. § 5328(a)(3), (4), (9). The weight that a court assigns to any one Section 5328(a) factor is almost entirely discretionary.[5] *See M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013) ("It is within the trial court/s purview as the finder of fact to determine which factors are most salient and critical in each particular case.").

---

[5] The critical exception is that trial courts must give weighted consideration to those factors that affect the safety of the child. *See* 23 Pa.C.S.A. § 5328(a).

In this case, our review of the record supports the trial court's finding that Father is an appropriate parent for Child and that he is capable of caring for her fifty percent of the time. While Father was relatively uninvolved during the first five years of Child's life, he testified that his lack of involvement resulted from his demanding medical training. N.T., 3/13/19, at 122-27, 147, 169. He testified that he purchased a home close to Child after completing his training, so that he could become more involved in her life. *Id.* at 128. The court found this testimony credible. *See* Trial Court Opinion, 3/21/19, at 12 ("Although Mother was the Child's primary caregiver for the first five years of the Child's life, this was due primarily due [*sic*] to Father's medical training schedule – not due to any lack of interest in Child on Father's part."). Thus, it was within the court's discretion to conclude that Child would benefit from spending more time with Father and that a shared physical custody award would be in her best interest. We see no reason to disturb this determination and we affirm the court's custody award.

Finally, we consider Mother's third claim, in which she argues that the trial court erred and/or abused its discretion by ordering that Child attend school in the school district where Father lives, rather than the school district where Mother has moved, in the event she no longer attends private school. Mother contends that the court based its decision not on Child's best interests, but on its belief that Mother could have located a new home closer to Father

but chose not to do so, and on its belief that sending Child to Mother's school district would be inconvenient for Father. Mother's Brief at 26-28.

It is difficult to discern the basis for the trial court's decision that Child should attend Father's school district rather than Mother's school district. The only relevant evidence presented during the hearing was Mother's testimony that she reviewed the website "schooldigger.com," which ranked her district higher than Father's district and indicated that the students in her district had higher test scores. N.T., 3/13/19, at 79-80. Moreover, the court awarded the parties shared physical custody of Child on an alternating weekly basis. Child would be spending an equal amount of time in both districts such that neither district would appear to be easier or more convenient for Child to attend. The court even acknowledged that Child would need to change schools regardless of which district she lived in, because she had been attending a private school previously. *See* Trial Court Opinion, 3/21/19, at 5. Upon review, the court's clearest explanation of its rationale consisted of the following statement:

> Mother argues that the court erred when it ordered that the Child should attend the school district in which Father resides rather than the school district into which Mother intended to move. This is the crux of Mother's disagreement with the court's decision. Although the court denied her request to relocate the Child, it did not prohibit Mother from moving to Stevens or from exercising her periods of custody there. The court also entered a shared custody schedule, giving Mother and Father equal custody time. But the court directed that the Child should be enrolled in Father's school district (if and when the parties choose to enroll her in public school). Should Mother choose to move to Stevens, she will bear the burden of transporting the Child to and from school, as well as the burden of greater travel time to involve herself in the Child's education and extracurricular activities. In making this direction,

the court did not commit an error of law or an abuse of discretion. Instead, the direction that the Child attend school in Father's school district is consistent with the court's denial of Mother's request to relocate the Child. In making that ruling, the court analyzed the ten relocation factors under 23 Pa.C.S.A. § 5337(h) and determined Mother had failed to carry her burden that the move to Stevens was in the Child's best interest.

Trial Court Opinion, 4/5/19, at 8-9 (citations omitted).

Given our conclusion that the trial court abused its discretion by finding that Mother's move from Manheim to Stevens was a "relocation" pursuant to our child custody statute, we must also conclude that the court committed an error of law by ordering that Child attend Father's school district based on its analysis of the Section 5337(h) custody relocation factors. Determining which school Child should attend was purely a matter of Child's best interest and no analysis of the Section 5337(h) factors was necessary. *See S.S. v. K.F*., 189 A.3d 1093, 1098 (Pa. Super. 2018) ("When parties cannot resolve a dispute about where to educate their children, the court may act as arbiter to decide that issue, based on the best interests of the children.").

However, unlike our decision regarding the trial court's mistaken denial of Mother's "relocation" to Stevens, we cannot conclude that the court's school choice decision was harmless. It appears that the court believed its school choice and relocation decisions were the same, and that it decided that Child would attend Father's school district based not on an assessment of which district would be best for Child, but on its conclusion that Mother failed to meet her burden of proof in the relocation proceeding. It is not clear what decision

the court would have made had it applied the correct legal standard and may well have ordered that Child attend Mother's district based on its allegedly superior academic credentials.

Based on the foregoing analysis, we conclude that we must vacate the portion of the March 15, 2019 order directing that Child attend Father's school district in the event she no longer attends private school and remand this case for the trial court to make a new school choice decision in accordance with Child's best interests. For the sake of clarity, the school choice provision in the March 15, 2019 order should remain in force until the court enters its new order. If the court believes that further evidence would be helpful in making this decision, it may conduct an additional hearing. Because we conclude that the court's mistaken finding that Mother's move to Stevens was a "relocation" was harmless, and because we discern no abuse of discretion or error of law in the court's decision to award the parties shared legal and physical custody, we affirm the March 15, 2019 order in all other respects.

Order affirmed in part and vacated in part. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/13/2020

- 20 -